INHABITANTS OF BRADLEY *vs.* PENOBSCOT CHEMICAL FIBRE COMPANY.

Penobscot.　　Opinion June 29, 1908.

*Taxation.　Pulp Wood.　Mechanic Arts.　Revised Statutes, chapter 9, section 13,
paragraph I.*

The plaintiff town of Bradley assessed a tax, for the year 1906, on certain pulp wood belonging to the defendant. The defendant, an Old Town corporation, on April 1, 1906, owned and operated in Old Town, on the west side of the Penobscot River, a mill for the manufacture by mechanical and chemical processes of soda pulp, from pulp wood, for sale to paper manufacturers. On the same side of the river it also had a cutting up saw mill and a piling ground. Across the river in the plaintiff town, it also had a cutting up saw mill and a piling ground. In the defendant's operations, pulp wood, out of which pulp was to be manufactured, was driven down the river in log lengths to a boom above the defendant's mill. From this boom some of the logs were let down into a boom on the Old Town side of the river, taken out and cut into four foot lengths, and used in the mill or piled on the piling ground. Other logs, for economy and convenience in operation, were let down into a boom on the Bradley side of the river, then taken out and cut into four foot lengths, and piled on the Bradley piling ground, from which it was taken across the river in the winter on the ice to the soda mill or piling ground on that side. The pulp wood which was taxed by the plaintiff town had been so cut up and piled on the Bradley ground during the season prior to April 1, 1906, and was still there on that date. It was intended for use in the soda mill in Old Town, but it had not been removed to the Old Town side during the previous winter, because the piling ground on that side was so full that it could not be received there.

*Held:* That the wood was not taxable, April 1, 1906, by the plaintiff town, as being "employed in the mechanical arts" in that town.

On report. Judgment for defendant.

Action of debt brought by the plaintiff town against the defendant corporation to recover a tax assessed by the plaintiff town in 1906 on six thousand cords of pulp wood belonging to the defendant corporation. Plea, the general issue. Tried at the October term, 1907, Supreme Judicial Court, Penobscot County. At the

conclusion of the testimony, it was agreed that the case should be reported to the Law Court for determination upon so much of the evidence as was competent and legally admissible.

The case appears in the opinion.

*Matthew Laughlin*, for plaintiffs.

*J. F. Gould*, for defendant.

SITTING: SAVAGE, PEABODY, SPEAR, CORNISH, KING, JJ.

SAVAGE, J.    Action to recover taxes duly assessed on six thousand cords of poplar pulp wood in 1906.

It is not in dispute that the defendant is not an inhabitant of Bradley.   It is an Old Town corporation.  · Nor is it disputed that it owned the pulp wood assessed, nor that the wood, on April 1, 1906, was in the plaintiff town.   But the plaintiff claims that the wood was "employed in the mechanic arts" by the defendant in Bradley at that time, and that the defendant then occupied a saw mill, wharf and landing place in Bradley for the purpose of such employment, and, hence, that the wood was taxable to it in Bradley, in accordance with R. S., chap. 9, sect. 13, par. 1, which provides that "all personal property employed in trade, in the erection of buildings or vessels, or in the mechanic arts, shall be taxed in the town where it is so employed, on the first day of each April; provided that the owner, his servant, sub-contractor or agent, so employing it, occupies any store, shop, mill, wharf, landing place or ship yard therein for the purpose of such employment."   The foregoing claims are denied by the defendant.   The only question presented is whether, under the circumstances of the case, the wood was taxable to the defendant in Bradley.

The record discloses the following facts:   The defendant owns and operates a mill for the manufacture, by mechanical and chemical processes, of soda pulp, sometimes called chemical fibre pulp. The pulp is manufactured to be sold to paper manufacturers.   The mill is situated on or near the west bank of the Penobscot river in that part of Old Town called Great Works.   On the same side of the river it also has a cutting up saw mill and a piling ground.   On the

opposite side of the river, in Bradley, it has another cutting up saw mill and another piling ground.  The saw mill in Bradley is equipped with a cutting up saw, a "nigger" and a splitting saw.  A part of the pulp wood consumed by the defendant comes to it by rail on the Great Works side of the river, in four foot lengths.  This is unloaded from the cars and either taken directly to the pulp mill, or hauled to the piling ground, as may be convenient.  The remainder of the defendant's pulp wood comes down the Penobscot river in log lengths, to a boom above the defendant's mill.  There the logs are divided, having reference to the room left vacant in each boom below, at the time, and part are let down into a boom on the Great Works side of the river, from which they are taken to the cutting up mill, cut into four foot lengths, split if necessary for convenient handling, and then taken to the pulp mill for immediate use, or piled on the piling ground in Great Works.  The remainder, for economy and convenience in operation, are let down into a boom on the Bradley side of the river.  They are then taken to the defendant's cutting up mill in Bradley, cut into four foot lengths, and split, if necessary, and are then piled on cars and hauled by horse power, over tracks laid for that purpose, to the piling grounds in Bradley, and piled in tiers.  The cutting up mill usually runs from about the first of June to the first of November.  After the river freezes in the winter, the wood on the Bradley piling ground is hauled across the river on the ice, and either used at once in the pulp mill, or piled on the Great Works piling ground, as occasion may require.  The weight of the evidence is, we think, to the effect that usually all of the wood piled on the Bradley side of the river in any season, has been hauled over to the Great Works side during the ensuing winter.  But this is not true of every year.  Some years, either because it was impracticable to get it all across the river in a winter, or because the Great Works piling ground was so full that there was no room to receive it, some of the pulp wood was left on the Bradley piling ground after the winter was ended.  Such was the case with the six thousand cords in question.  It had been purchased by the defendant to be used in the manufacture of pulp in the Great Works mill.  It had been taken down the river into

the Bradley boom, cut up in the Bradley mill, and piled on the Bradley piling ground, where it remained on April 1, 1906, because the Great Works piling ground had been so full that the wood could not be taken over and stored there. It may be added that the defendant had no office in Bradley. It made no sales of its product in any stage of manufacture, in Bradley. All sales of its manufactured products were made in Great Works, where its main office was, and all shipments were made from there.

Under these circumstances, can it be properly said that this pulp wood was "employed in the mechanic arts," in Bradley, at the time it was assessed? We think not.

That the manufacture of wood pulp from pulp wood is a mechanic art may be assumed. The questions then arise, was this wood employed in the mechanic arts, when assessed? and, if so, where? But for the cutting up process in Bradley, we think the principles declared in *Ellsworth* v. *Brown*, 53 Maine, 519, and *Farmingdale* v. *Berlin Mills Co.*, 93 Maine, 333, would lead us necessarily to hold that this wood, though still in transit from the forest to the mill, and not yet having arrived within the town in which was the mill where it was designed to reduce it to pulp, was nevertheless "employed," within the meaning of the statute, "in the mechanic arts," and was so employed in the town in which was the mill which was its ultimate destination, namely, Old Town. In *Ellsworth* v. *Brown*, it was held that "logs designed to be manufactured and sold in some town other than that in which their owner resides, but in which, on the first day of April he occupies a mill, store or wharf, are rightfully taxable in such town, and not in the town where the owner resides, although they may not on the first day of April, in the year for which the tax is assessed, have actually arrived within the corporate limits of such town." In *Farmingdale* v. *Berlin Mills Co.*, logs which were intended by the owner for manufacture in a mill in a town other than that in which the owner resided, and which were in transit to the mill, but which had not, on the first day of April, arrived in the town where the mill was situated, were held to be employed in the trade or business of that mill on that

day, within the meaning and purpose of the statute, and so, taxable in that town.

Upon careful consideration, the court is of opinion that the fact that these logs while in transit were taken from the river in Bradley, cut into convenient lengths for handling and use, and stored until they could be conveniently removed to the mill where they were to be converted into pulp, and so remained in Bradley until April 1, 1906, does not take them out of the rule established by the cases above cited. The wood was still in transit. No doubt the cutting up process at the mill in Bradley aided and facilitated the final reduction of the wood into pulp, and perhaps in a certain broad sense was one of the processes of the mechanic arts in which the wood was being employed. But the real process, the one to which we think the statute was intended to apply, was carried on in the mill in Great Works. It was in that mill that the wood was " employed " in the mechanic arts by reason of its being designed to be reduced to pulp there. *Farmingdale* v. *Berlin Mills Co.,* supra. All the rest was preliminary and preparatory. The statute looks to the real employment, and not to the preparations for it.

It is claimed that the result is affected by the fact, as claimed, that the two yards, one on each side of the river, were contiguous, and that each was a part of one and the same plant. We think that matters not. If it were so, it would still be true that the ultimate destination of the wood, for employment in the mechanic arts, was the Great Works soda mill in Old Town.

Hence we conclude that this wood was not taxable by the town of Bradley.

*Judgment for the defendant.*